# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CLINTON EVANS, et al.** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 18-8972** |
| **SHERIFF JOSEPH LOPINTO, et al.** | **SECTION: "G"(4)** |

## ORDER

Pending before the Court is Defendants CorrectHealth Jefferson, LLC ("CHJ"), Ironshore Specialty Insurance Co., David Jennings ("Jennings"), and Dr. William Lo's ("Dr. Lo") (collectively, "Medical Defendants") Motion to Dismiss.[1] In this litigation, Plaintiffs Clinton Evans and Jeresa Morgan (collectively, "Plaintiffs") bring claims individually and on behalf of their deceased son, Jatory Evans ("Evans"), against Medical Defendants alongside Defendants Jefferson Parish, Sheriff Joseph Lopinto, Corrections Administrator and Deputy Chief Sue Ellen Monfra, Deputy Christopher Mayeaux (collectively, "Defendants").[2] Plaintiffs allege that Defendants failed to properly monitor Evans while he was incarcerated in Jefferson Parish Correctional Facility ("JPCC") and that their acts or omissions lead to Evans' death by suicide.[3] Having considered the motion, the memoranda in support and in opposition, and the applicable law, the Court denies the motion without prejudice and stays the case pending completion of a medical review panel.

---

[1] Rec. Doc. 27.

[2] Rec. Doc. 6 at 2–5.

[3] *Id.* at 1.

1

# I. Background

## A.    *Factual Background*

According to the First Amended Complaint, Evans was a pre-trial detainee in the custody and care of the Jefferson Parish Sheriff's Office when he died by hanging in his cell on September 27, 2018.[4] Plaintiffs allege that Evans had a known history of mental illness, as well as a history of serious suicide attempts.[5] Plaintiffs allege that while at JPCC, Evans expressed concerns and stresses including symptoms of Post-Traumatic Stress Disorder ("PTSD").[6] Plaintiffs further allege that in the days leading up to his death, Evans' behavior underwent changes that suggested that he was dealing with new and additional stressors.[7] Plaintiffs allege that in the days before his death, several other detainees noted how depressed Evans seemed to be.[8] Plaintiffs allege that despite this known history, and Evans behavior leading up to his death, Defendants failed to provide adequate suicide prevention measures.[9]

## B.    *Procedural Background*

On September 26, 2018, Plaintiffs filed a Complaint in this case.[10] On December 7, 2018, Plaintiffs filed the First Amended Complaint, which was identical to the original Complaint.[11]

---

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] Rec. Doc. 1.

[11] Rec. Doc. 6.

On January 24, 2019, Defendant Jefferson Parish filed a Motion to Dismiss and a request for oral argument on the motion.[12] On February 5, 2019, Plaintiffs filed an opposition to the Motion to Dismiss.[13] On February 19, 2019, Plaintiffs filed a supplemental opposition to the Motion to Dismiss.[14] The Court heard oral argument on the Motion to Dismiss on February 27, 2019.[15] On February 27, 2019, the Court issued an order denying Defendant Jefferson Parish's Motion to Dismiss without prejudice and gave Plaintiffs 30 days to amend the complaint to cure deficiencies noted at oral argument if possible.[16] On March 27, 2019, Plaintiffs filed a second amended complaint, which included additional allegations against Jefferson Parish but maintained the same allegations against the other defendants as the first amended complaint.[17]

On March 6, 2019, Medical Defendants filed the instant Motion to Dismiss.[18] On March 19, 2019, Plaintiffs filed an opposition.[19] On April 4, 2019, with leave of Court, Plaintiffs filed an amended opposition.[20] On April 5, 2019, Medical Defendants filed a reply in further support of

---

[12] Rec. Docs. 16, 17.

[13] Rec. Doc. 21.

[14] Rec. Doc. 23.

[15] Rec. Doc. 22.

[16] Rec. Doc. 25.

[17] Rec. Doc. 38. The instant motion to dismiss is references the First Amended Complaint. As the allegations in the First Amended Complaint and Second Amended Complaint are the same as they pertain to Medical Defendants, the Court will proceed with addressing the instant Motion to Dismiss.

[18] Rec. Doc. 27.

[19] Rec. Doc. 32.

[20] Rec. Doc. 43.

the Motion to Dismiss.[21]

## II. Parties' Arguments

**A.     *Medical Defendants' Arguments in Support of the Motion to Dismiss***

In the Motion to Dismiss, Medical Defendants recount Evans' medical treatment from his arrival at JPCC on November 9, 2016, until his death on September 27, 2017.[22] Then Medical Defendants argue that all of Plaintiffs' state and federal law claims against them should be dismissed because Plaintiffs fail to state a claim or plead sufficient facts to raise a right to relief above a speculative level.[23]

First, Medical Defendants argue that Plaintiffs' state law claim for medical malpractice, specifically count seven of the complaint, should be dismissed because it is premature.[24] Medical Defendants argue that allegations of medical malpractice fall under the Louisiana Medical Malpractice Act.[25] Medical Defendants argue that under this law, a medical malpractice claim against a private qualified health care provider is subject to dismissal as premature if the claim has not first been presented to a medical review panel.[26] Medical Defendants argue that Plaintiffs' medical malpractice state law claims should be dismissed because they are qualified health care providers and Plaintiffs currently have a claim pending before a medical review panel.[27]

---

[21] Rec. Doc. 41.

[22] Rec. Doc. 27-1 at 1–5.

[23] *Id.* at 6.

[24] *Id.*

[25] *Id.* at 6–7.

[26] *Id.* at 7.

[27] *Id.*

Medical Defendants also argue that any state law intentional tort claim fails because the allegations in the complaint are "legal conclusions couched as factual allegations."[28] Medical Defendants argue that the record shows that Medical Defendants did not intentionally harm Evans, specifically stating that "Dr. Lo increased decedent's antipsychotic shortly before his suicide and decedent was seen/checked on extensively by Mr. Jennings and other medical staff throughout his incarceration."[29]

Medical Defendants then argue that Plaintiffs' federal claims should also be dismissed.[30] First, Medical Defendants argue that Plaintiffs' deliberate indifference claim, specifically count three, fails because Plaintiffs only make conclusory allegations.[31] Medical Defendants argue that under Section 1983, a convicted prisoner can only succeed on a claim for inadequate medical treatment if he demonstrates that there has been "deliberate indifference to serious medical needs by prison officials or other state actors."[32] Medical Defendants argue that this consists of two elements: (1) the plaintiff must show that the deprivation was objectively serious;[33] and (2) the plaintiff must show that the official knew of and disregarded a risk of harm.[34] Medical Defendants argue that "mere negligence" is not enough to create liability, and that deliberate indifference is

---

[28] *Id.*

[29] *Id.*

[30] *Id.* at 8.

[31] *Id.*

[32] *Id.* (citing *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007)).

[33] *Id.* (citing *Wilson v. Seiter,* 501 U.S. 294, 297 (1991); *Mendoza v. Lynaugh,* 989 F.2d 191, 193 (5th Cir. 1993)).

[34] *Id.* (citing *Reeves v. Collins*, 27 F. 3d 174,176 (5th Cir. 1994) (citing *Farmer v. Breenen,* 511 U.S. 825, 847 (1994))).

an "extremely high" standard to meet.[35] Medical Defendants argue that Plaintiffs claim for deliberate indifference fails because the allegations in the complaint, and the medical records in the record, show that "decedent was provided extensive medical care, placed on suicide watch on two occasions, and regularly received his anti-psychotic medication."[36] Medical Defendants claim that in similar cases, the Fifth Circuit has held that an inmate who has been examined by medical personnel fails to set forth a valid showing of deliberate indifference to serious medical needs.[37]

Then, Medical Defendants argue that Plaintiffs' claim that CHJ is liable "under the doctrine of respondeat superior for the constitutional torts of its employees," count two in the complaint, should be dismissed with prejudice as the Fifth Circuit has recognized that there is no vicarious liability under Section 1983.[38] Likewise, Medical Defendants argue that the Court should dismiss Plaintiffs' claim for supervisory liability because they cannot establish that Medical Defendants acted with deliberate indifference.[39]

Similarly, Medical Defendants argue that Plaintiffs' *Monell* claim, count six, should be

---

[35] *Id.* at 8–9 (citing *Mace v. City of Palestine,* 333 F.3d 621, 626 (5th Cir. 2003); *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

[36] *Id.* at 10.

[37] *Id.* (citing *Norton v. Dimazana*, 122 F.2d 286, 292 (5th Cir. 1997); *Callaway v. Smith County*, 991 F. Supp. 801, 809 (E.D. Tex. 1998); *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985); *Mayweather v. Foti*, 958 F.2d 91 (5th Cir. 1992)).

[38] *Id.* at 11 (citing *Doe v. Taylor*, 15 F.3d 443 (5th Cir 1994) (en banc) (holding "The Court, however, also held that local governments cannot be held liable under § 1983 on a respondeat superior theory. Similarly, we have held that supervisory officials may not be found vicariously liable for the actions of their subordinates under § 1983."); *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005) (providing "Supervisory officials cannot be held liable under section 1983 for the actions of subordinates, such as Hill, on any theory of vicarious or respondeat superior liability.").

[39] *Id.* (citing *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (providing "In order to establish supervisor liability for constitutional violations committed by subordinate employees, plaintiff must show that the supervisor act[ed], or fail[ed] to act, with deliberate indifference to violations of others' constitutional rights committed by their subordinates.").

dismissed because Plaintiffs cannot establish "deliberate indifference" to Evans' needs.[40] Medical

Defendants argue that the Fifth Circuit has held that to succeed on a Section 1983 deliberate

indifference claim, a plaintiff must allege that:

> (1) an employee of the local governmental body violated plaintiff's clearly established constitutional rights with subjective deliberate indifference, and (2) the violation resulted from a policy or custom adopted or maintained by the local governmental body with objective deliberate indifference.[41]

For these reasons, Medical Defendants argue that all of the claims pending against them should be

dismissed.[42]

**B.      *Plaintiffs' Arguments in Opposition to the Motion to Dismiss***

In opposition, Plaintiffs argue that Medical Defendants repeatedly failed to execute their

own plans of care or medically necessary care mandated by policy, and that Medical Defendants'

indifference was consistent with a pattern of care for similarly situated individuals.[43]

Regarding Plaintiffs' state law claims, count seven and count eight of the complaint,

"Plaintiff[s] do[] not dispute the statutory necessity for the medical review panel," but Plaintiffs

nonetheless argue that judicial economy does not favor dismissal of these claims at this time.[44]

Plaintiffs specifically ask that the Court stay these claims pending review by the medical review

panel, or that the Court dismiss these claims without prejudice.[45]

---

[40] *Id.*

[41] *Id.* at 12–13 (citing *Olabisiomotosho v. City of Houston*, 185 F. 3d 521, 528–29 (5th Cir. 1999)).

[42] *Id.*

[43] Rec. Doc. 43 at 1–2.

[44] *Id.* at 15–16.

[45] *Id.*

Regarding Plaintiffs' claim for deliberate indifference in count three of the complaint, Plaintiffs argue that violations of rights for pre-trial detainees like Evans should be assessed under an objective deliberate indifference standard, not a subjective deliberate indifference standard.[46] Plaintiffs argue that under this standard, an official is liable for an Eighth Amendment violation where he or she acts or fails to act, despite knowledge of a substantial risk of serious harm to an inmate.[47]

However, Plaintiffs argue that under either a subjective or objective deliberate indifference standard, they properly state a claim against Medical Defendants because Medical Defendants "repeatedly delayed or failed to see [Evans] despite policies and medical orders that acknowledged medically necessary treatment."[48] Specifically, Plaintiffs argue that Defendant Dr. Lo, a psychiatrist, never saw Evans while he was on suicide watch, despite a policy that all inmates suspected of suicidal ideation should be referred to a psychiatrist for evaluation.[49] Instead, Plaintiffs argue that Defendant Jennings, a social worker, made a cursory evaluation of Evans.[50]

---

[46] *Id.* at 3–4 (citing *Bell v. Wolfish*, 441 U.S. 520, 583, (1979) (holding violations of pre-trial detainees' rights must be determined by a different standard than sentenced prisoners); *Kingsley v. Hendrickson*, 135 S.Ct. 2466, 2473, 192 L.Ed.2d 416 (2015) (holding the appropriate standard for pre-trial excessive force claims is an objective one); *Castro v. County of LA*, 833 F.3d 1060, 1070 (9th Cir. 2016) (extending objective deliberate indifference standard in medical care case); *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (holding objective deliberate indifference is proper standard for pre-trial claims); *Miranda v. Cty. of Lake*, 900 F.3d 335, 354 (7th Cir.2018) (holding objective deliberate indifference was standard in medical care case); *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 424 (5th Cir.2017) (Graves, J. Concurring in part finding that "there are still different standards for pretrial detainees and DOC inmates….if the standards were to be commingled, it would be toward an objective standard as to both on at least some claims.).

[47] *Id.* at 5–6 (citing *Farmer v. Brennan*, 511 U.S. 825, 837, 862 (1994)).

[48] *Id.* at 6.

[49] *Id.* at 7.

[50] *Id.* at 7–8.

Plaintiffs argue that Jennings used boilerplate language to support Evans' discharge, and that Jennings used similar language to support the discharge of another inmate, Joshua Belcher, who similarly committed suicide before Evans' death.[51] Further, Plaintiffs argue that Jennings did not provide follow up care after Evans was released from suicide watch.[52]

Regarding Plaintiffs' claims for failure to supervise and a *Monell* violation, count two and count six, Plaintiffs argue that CHJ is liable because it was deliberately indifferent to a policy, pattern, or practice that caused a deprivation of Evans' rights.[53] Plaintiffs argue that "a failure to adopt a policy can be deliberately indifferent when it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights."[54] Plaintiffs acknowledges that this is an "objective deliberate indifference" standard.[55] Plaintiffs argue that CHJ demonstrated deliberate indifference by failing to train, and failing to promulgate policies to ensure patients received timely adequate psychiatric care and suicide prevention.[56] Specifically, Plaintiffs argue that CHJ created a condition severely limiting coverage of qualified mental health prescribers and providers, created punitive suicide watch conditions without a clinical basis, failing to provide supportive therapy, and failing to provide suicide step-down and follow up plans for patients.[57]

Further, Plaintiffs argue that while Medical Defendants are not vicariously liable, they are

---

[51] *Id.*

[52] *Id.* at 8.

[53] *Id.* at 10 (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978)).

[54] *Id.* (citing *Rhyne v. Henderson County*, 973 F.2d 386, 392 (5th Cir. 1992)).

[55] *Id.* at 11.

[56] *Id.*

[57] *Id.*

subject to supervisory liability for failure to train and supervise its employees.[58] Plaintiffs argue that Louisiana physicians have a legal duty to supervise the registered nurses and licensed practical nurses working under them and that Medical Defendants failed to fulfill this duty as it is unclear if any physician was supervising the nurses providing care in this case.[59]

Additionally, Plaintiffs argues that while there may be a factual question regarding the party ultimately responsible for the failure to provide adequate healthcare, all Medical Defendants are sufficiently implicated by the allegations in the complaint to survive dismissal.[60] Finally, Plaintiffs ask that if the Court finds Plaintiffs have not stated a claim upon which leave can be granted, that the Court give them leave to amend the complaint once more.[61]

## C.     *Medical Defendants' Arguments in Further Support of the Motion to Dismiss*

In further support of the Motion to Dismiss, Medical Defendants argue that Plaintiffs present conclusory allegations, pointing as an example to Plaintiffs statement that Medical Defendants "repeatedly delayed or failed to see Mr. Evans despite policies and medical orders that acknowledged medically necessary treatment."[62] Medical Defendants argue these conclusory allegations are contradicted by medical records and statements in the amended complaint showing that Evans was observed by Dr. Lo or Jennings on various dates throughout his incarceration, specifically after he was released from suicide watch, and that Evans was given psychiatric

---

[58] *Id.* at 12–13 (citing *Doe v. Rains County Independent School District*, 66 F.3d 1402, 1412–13 (5th Cir. 1995)).

[59] *Id.* at 14 (citing La. Rev. Stat. Ann. § 37:913; 37:961(4)).

[60] *Id.* at 14–15.

[61] *Id.* at 17.

[62] Rec. Doc. 41 at 1.

medication during this time period.[63] Medical Defendants argue that the Fifth Circuit has held that a failure to monitor inmates under similar circumstances or an incorrect diagnosis does not amount to deliberate indifference.[64] Medical Defendants point out that Evans was released from suicide watch, denied suicidal ideations, and did not request additional medical after his last visit with Dr. Lo.[65]

Regarding the supervisory liability and *Monell* claims, Plaintiffs argue that these claims also fail as a matter of law.[66] First, Medical Defendants argue that if the claims against Dr. Lo and Jennings for deliberate indifference fail, then the claims against CHJ fail as a matter of law.[67] Medical Defendants argue that a failure to supervise claim should not be based on the actions of nurses acting under other healthcare providers, but rather upon the actions of the individuals at issue in this case.[68] Medical Defendants once again assert that the record reflects that they provided care for Evans, and at most, there inaction may amount to negligence, not deliberate indifference.[69]

Finally, regarding the state law claims, Medical Defendants argue that the Court should dismiss these claims without prejudice or stay and administratively close the case entirely.[70]

---

[63] *Id.* at 2–3.

[64] *Id.* at 4 (citing *Estate of Pollard v. Hood County, Texas*, 579 F. App'x 260 (5th Cir. 2014)).

[65] *Id*. at 5.

[66] *Id.* at 6.

[67] *Id.*

[68] *Id.* at 6–7.

[69] *Id.* at 7–8.

[70] *Id*. at 8–9.

Medical Defendants argue that the Court should not issue a partial stay because the ongoing medical review panel may impact deadlines set in the Court's scheduling order.[71]

### III. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted."[72] A motion to dismiss for failure to state a claim is "viewed with disfavor and is rarely granted."[73] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[74] "Factual allegations must be enough to raise a right to relief above the speculative level."[75] A claim is facially plausible when the plaintiff has pleaded facts that allow the court to "draw a reasonable inference that the defendant is liable for the misconduct alleged."[76]

On a motion to dismiss, asserted claims are liberally construed in favor of the claimant, and all facts pleaded are taken as true.[77] However, although required to accept all "well-pleaded facts" as true, a court is not required to accept legal conclusions as true.[78] "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."[79]

---

[71] *Id.*

[72] Fed. R. Civ. P. 12(b)(6).

[73] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

[74] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008)).

[75] *Twombly*, 550 U.S. at 556.

[76] *Id.* at 570.

[77] *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007).

[78] *Iqbal*, 556 U.S. at 677–78.

[79] *Id.* at 679.

Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice.[80] The complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[81] That is, the complaint must offer more than an "unadorned, the defendant-unlawfully-harmed-me accusation."[82] From the face of the complaint, there must be enough factual matter to raise a reasonable expectation that discovery will reveal evidence as to each element of the asserted claims.[83] If factual allegations are insufficient to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an "insuperable" bar to relief, the claim must be dismissed.[84]

## IV. Analysis

Plaintiffs allege that Defendants failed to properly monitor Evans while he was incarcerated in JPCC and that their acts or omissions lead to Evans' death by suicide.[85] Plaintiffs bring both federal and state law claims for relief, including state law claims for medical malpractice.[86]

Medical Defendants argue that Plaintiffs' state law claims for medical malpractice are

---

[80] *Id.* at 678.

[81] *Id.*

[82] *Id.*

[83] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

[84] *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007); *Moore v. Metro. Human Serv. Dep't*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (Vance, J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

[85] Rec. Doc. 38 at 1–2.

[86] *Id.* at 2, 33.

premature as the claims are currently under review by a medical review panel.[87] Plaintiffs "do[] not dispute the statutory necessity for the medical review panel," but Plaintiffs argue for the sake of judicial efficiency that the Court either grant a partial stay for these claims or dismiss the claims without prejudice.[88] Medical Defendants respond that the Court should not issue a partial stay because the ongoing medical review panel may impact deadlines set in the Court's scheduling order.[89] Therefore, Medical Defendants argue that the Court should either stay the case in its entirety or dismiss the medical malpractice claims against them without prejudice.[90]

The Louisiana Medical Malpractice Act states that "[n]o action against a health care provider covered by this Part, or his insurer, may be commenced in any court before the claimant's proposed complaint has been presented to a medical review panel."[91] Louisiana courts have held that a medical malpractice claim against a private qualified health care provider is subject to dismissal on an exception of prematurity if such claim has not first been presented to a medical review panel.[92] The Fifth Circuit has found that the Louisiana Medical Malpractice Act is constitutional and applies to state law medical malpractice claims filed in federal court.[93] Here, the state law medical malpractice claims against Medical Defendants are currently being reviewed

---

[87] Rec. Doc. 27-1 at 5.

[88] Rec. Doc. 43 at 15–16.

[89] Rec. Doc. 41 at 8–9.

[90] *Id.*

[91] La. R.S. 40:1231.8(B)(1)(a)(i) (formerly La. R.S. 40:1299.47(B)(1)(a)(i)).

[92] *Blevins v. Hamilton Medical Center, Inc.*, 2007-127 (La. 6/29/07); 959 So. 2d 440 (citing La. R.S. 40:1299.47(A); La. C.C.P. art. 926); *Alonso v. Tulane U. Med. Ctr.*, 16-420 (La. App. 5 Cir. 2016); 215 So. 3d 355, 358.

[93] *See Seoane v. Ortho Pharmaceuticals, Inc.*, 660 F.2d 146 (5th Cir. 1981).

by a medical review panel.[94] Therefore, these claims cannot proceed until the medical review panel has issued its decision.

However, the Court still needs to address whether to grant dismissal of these claims or a stay of the case. The Court notes that this case involves multiple defendants, multiple claims, and multiple issues are raised in the instant motion. Plaintiffs' amended complaint contains both federal and state law claims against Medical Defendants.[95] Plaintiffs also brings federal and state law claims against Jefferson Parish, Sheriff Joseph Lopinto, Corrections Administrator and Deputy Chief Sue Ellen Monfra, Deputy Christopher Mayeaux.[96] The only claims before the medical review panel are Plaintiffs' medical malpractice claims against Medical Defendants.[97]

It does not appear that the Fifth Circuit has addressed whether a district court should dismiss medical malpractice claims without prejudice or stay a case where claims against some defendants are pending before a medical review panel, while claims against other defendants are not pending before a medical review panel. According to the statute, dismissal is normally appropriate, and multiple district courts within the Fifth Circuit have dismissed medical malpractice claims without prejudice when the claim is pending before a medical review panel.[98] However, in at least one case, the Fifth Circuit affirmed a district court decision staying a case

---

[94] *See* Rec. Doc. 27-10.

[95] Rec. Doc. 6 at 22–31.

[96] *Id.*

[97] *See* Rec. Doc. 27-10.

[98] *See e.g. Acosta v. Pelican State Outpatient Clinic*, No. 03–3050, 2004 WL 459316, at *2–3 (E.D. La. Mar. 11, 2004); *Senia v. Pfizer, Inc.*, 2006 WL 1560747 (E.D. La. 2006).

pending review of a medical malpractice claim  by a medical review panel.[99] Further, district courts within the Fifth Circuit have held on multiple occasions that a stay of the entire case is appropriate if there are multiple claims or parties and the claims are sufficiently related to the claim pending before the medical review panel.[100]

All of Plaintiffs' claims, including the medical malpractice claims, arise out of Evans' suicide while he was imprisoned in JPCC under the supervision of various individual defendants.[101] Plaintiffs allege that all defendants failed to properly monitor and treat Evans and that their acts or omissions lead to Evans' death by suicide.[102] Considering these facts, the Court finds that judicial economy favors consideration of all of Plaintiffs' claims together after the conclusion of the medical review panel. The opinion of the medical review panel may be relevant to the disposition of Plaintiffs' federal and state law claims pending against all of the defendants.[103] Further, the Court notes that the Fifth Circuit has held that a district court has general discretionary power to stay proceedings before the court in the control of its docket and in the interest of justice.[104] Therefore, the Court will stay and administratively close this matter until the medical

---

[99] *See Seoane*, 660 F.2d at 146.

[100] *Hayden v. Cunningham Pathology Associates*, 1991 WL 62102 (E.D. La. 1991) (granting a stay when claims arose out of the same "operative facts"); *Vaughn ex rel. Vaughn v. Hospital Service Dist. No. 1 Jefferson Parish*, 2002 WL 126649, at *2 (E.D. La. 2002) (finding it proper to grant a stay when "related" claims "overlap"); *Sousa ex rel. v. Prosser*, No. 03-2942, 2004 WL 1497764, at *4-5 (E.D. La. July 1, 2004) (granting motion to stay to avoid "piecemeal" resolution, ensure consistent results, and promote judicial economy by having matters litigated only once); *Hungerford v. Smith & Nephew, Inc.*, 2016 WL 4499461, at *2 (W.D. La. Aug. 23, 2016) (granting motion to stay to avoid "piecemeal" litigation).

[101] Rec. Doc. 6 at 1.

[102] *See generally* Rec. Doc. 6.

[103] *See Seoane*, 660 F.2d at 149 (noting that the opinion of the medical review panel is admissible at trial and, although not conclusive, may be relied upon similar to expert evidence).

[104] *McNight v. C.H. Blanchard,* 667 F.2d 477, 479 (5th Cir. 1982); *see also Landis v. N. Am. Co.,* 299 U.S.

review panel renders its decision.

## IV. Conclusion

Because the medical malpractice claims against Medical Defendants are currently before a medical review panel, the Court denies the motion without prejudice and stays the case pending completion of a medical review panel. Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss [105] is **DENIED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** this matter is **STAYED AND ADMINISTRATIVELY CLOSED** pending completion of the medical review panel. After the medical review panel renders a decision, any party may move to reopen this case.

**NEW ORLEANS, LOUISIANA**, this  8th  day of July, 2019.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

248, 254 (1936) (finding that a district court has broad discretion to stay proceedings and to control its docket in order to promote "economy of time and effort for itself, for counsel, and for litigants").

[105] Rec. Doc. 16.